IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH FRANCIS D'ANGELO III | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of Social Security | : | NO. 14-6594 |

MEMORANDUM

Dalzell, J.                                                                                                          March 11, 2016

## I.   Introduction

We consider here plaintiff Joseph Francis D'Angelo III's action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking judicial review of an adverse decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claims for disability insurance benefits under Title II and Social Security Income under Title XVI of the Social Security Act. Magistrate Judge M. Faith Angell issued a Report and Recommendation ("R&R") that we deny the relief D'Angelo seeks and affirm the Commissioner's decision. D'Angelo objects to several portions of the R&R. As explained below, we will adopt and approve the Report and Recommendation over D'Angelo's objections and affirm the Commissioner's decision.

## II.   Standard of Review

When a party makes timely and specific objections to a magistrate judge's R&R, the district court applies de novo review to the issues raised in those objections. See 28 U.S.C. §636(b)(1); see also United States v. Raddatz, 447 U.S. 667, 674-75 (1980). But we may only review the Administrative Law Judge's ("ALJ") final decision to determine whether that

decision is supported by substantial evidence, and so we are bound by the ALJ's findings of fact if they are so supported. See Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. §405(g)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, so it need not be either a large or a considerable amount of evidence. Hartranft, 181 F.3d at 360. Even if we would have decided the factual inquiry differently, we may not set aside a decision supported by substantial evidence. Id. An ALJ's decision must therefore present a sufficient explanation of the final determination in order to provide the reviewing court with the benefit of the factual basis underlying the ultimate disability finding. See Cotter v. Harris, 642 F.2d 700, 704-05 (3d Cir. 1981). The ALJ's decision need only discuss the most pertinent and relevant evidence regarding a claimant's disability, but it must provide sufficient discussion to allow the reviewing Court to determine whether its rejection of potentially significant evidence was proper. See Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008) (internal citation omitted).

Because D'Angelo did not object to Judge Angell's background and procedural history, we draw our factual and procedural recitation from that portion of the R&R.

### III.     Factual And Procedural Background

Plaintiff Joseph Francis D'Angelo III was born on June 29, 1977. R&R at 1. He has at least a high school education and is able to communicate in English. Id.  He has past relevant work experience as a prep cook, sales associate, waiter, health club sales associate, and valet attendant. Id. D'Angelo seeks review of ALJ Nancy Lisewski's unfavorable decision of February 13, 2013. Id. The ALJ found that:  (1) D'Angelo met the Social Security Act's insured status requirements through December 31, 2012; (2) he was not under any disability within the

meaning of the Social Security Act at any time from the alleged onset date of October 1, 2009 through February 13, 2013; (3) since the alleged onset date, his anxiety and mood disorders were severe impairments; and (4) considering all the evidence, he had the residual functional capacity ("RFC") to perform a range of work at all exertional levels, but was limited to simple, unskilled work with a specific vocation preparation of one or two with no more than occasional social contact. Id. at 1-2.

The Appeals Council denied D'Angelo's request for review on September 16, 2014, and D'Angelo filed this complaint on November 17, 2014. Id. at 2. This case was initially assigned to the Honorable L. Felipe Restrepo, who referred the matter to Magistrate Judge Angell for a report and recommendation. Id. at 2 n.1. The case was reassigned to us on January 20, 2016 and Judge Angell issued her R&R on February 23, 2016. Id. at 2. The R&R recommends that we deny the relief D'Angelo seeks and affirm the decision of the Commissioner because substantial evidence supports the ALJ's RFC assessment, and the ALJ properly considered the record, including the relative weighing of various witnesses' testimony. Id. at 7, 9.

**IV.     Discussion**

To qualify for disability benefits under the Social Security Act, a person must be disabled as defined by statute and accompanying regulations. To establish a disability under the Social Security Act, a claimant must demonstrate that there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period. Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001); see also 42 U.S.C. § 423. A claimant may establish a disability by either (1) producing medical evidence that he is per se disabled by meeting or equaling certain listed impairments set forth in 20 C.F.R. § 404.1525, or (2) demonstrating an impairment of such severity as to render him unable to engage

in any kind of substantial gainful work that exists in the national economy. Heckler v. Campbell, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A). The Commissioner has promulgated regulations that outline a five-step sequential evaluation process to determine whether the claimant is disabled. 20 C.F.R. § 404.1520.[1] Following the steps in order, an ALJ's analysis ends if he determines that a claimant is not disabled. Id. The ALJ resolves conflicts in the evidence, determines the evidence's credibility, and assigns the appropriate weight to be given such evidence. Plummer, 186 F.3d at 429; Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 2004).

D'Angelo raises five objections to the R&R. We consider them in turn.

First, D'Angelo objects to the portion of the R&R finding that the notes of both his psychiatrist, Dr. Urban, and therapist, Ms. Charles, provided a sufficient basis for the ALJ to conclude that the record contained inconsistent treatment notes and to accordingly assign less weight to Dr. Shelly Oxenhorn's opinion. Pl.'s Objs. at 1 (citing R&R at 15). D'Angelo argues that the ALJ made no mention of Dr. Urban's or Ms. Charles's notes in her decision, and so plainly did not rely upon them as grounds for finding that Dr. Oxenhorn's opinion was inconsistent with the record. Id.

---

[1] At Step 1, the Commissioner determines whether the claimant is engaging in substantial gainful activity. An individual presently working would not be found to be disabled regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b). Step 2 involves evaluating the claimant's impairments and their respective severity. 20 C.F.R. § 404.1520(c). Step 3 requires determining whether the claimant has an impairment -- or combination of impairments -- that meets or equals any of the listed impairments found in Appendix 1. 20 C.F.R. § 404.1520(d). Step 4 requires determining the claimant's RFC and considering whether he is capable of performing any of his past relevant work. If the claimant is so able, he will not be considered to be disabled. 20 C.F.R. § 404.1520(e). Finally, Step 5 involves determining whether the claimant is capable of performing other work available in the national economy. 20 C.F.R. § 404.1520(f). See, e.g., Ramirez v. Barnhart, 372 F.3d 546, 550–51 (3d Cir. 2004).

D'Angelo is correct that the ALJ did not expressly refer to either Dr. Urban's or Ms. Charles's notes in her decision. When deciding to give little weight to Dr. Oxenhorn's October, 2011 psychiatric impairment questionnaire, the ALJ noted that Dr. Oxenhorn had only been treating D'Angelo for a few months and that her global assessment function ("GAF") score for D'Angelo was inconsistent with her assessment that D'Angelo was not out of touch with reality and had a fair to good prognosis. Administrative R. at 29. The ALJ stated that Dr. Oxenhorn's opinion was largely inconsistent with the "treatment notes of record" and cited to Exhibit 12F, page 1. Id. Exhibit 12F is Dr. Oxenhorn's Psychiatric/Psychological Impairment Questionnaire from October of 2011 regarding D'Angelo. Administrative R. at 419. It is directed to the attention of Dr. Urban, but contains no material from him. Id.

In the process of upholding the ALJ's decision giving little weight to Dr. Oxenhorn's opinion, the R&R noted that Dr. Urban's and Ms. Charles's treatment notes indicated that D'Angelo was significantly depressed and anxious, that his affect was severely constricted and his attention and concentration were poor, but the notes also included checked boxes indicating that D'Angelo was well-groomed with normal/clear speech, cooperative behavior, logical thought content, no delusions, full affect, normal insight and judgment, no suicidal or homicidal ideation, no violent behavior, and average demeanor, eye contact, and intelligence. R&R at 15. The R&R concluded that those checked boxes formed a sufficient basis for the ALJ's conclusion that the record contained inconsistent treatment notes. Id.

An administrative order must be reviewed based on the grounds upon which the issuing authority states that the decision is based, and so a district court would err if it attempted to rectify an ALJ's failure to consider all of the evidence by relying on medical records that were not even mentioned by the ALJ. Fargnoli, 247 F.3d at 44 n.7. It is not entirely clear what the ALJ

5

meant by "treatment notes of record," and so it is also unclear whether the ALJ meant to refer to notes from Dr. Urban or Ms. Charles, or the internal inconsistencies in Dr. Oxenhorn's questionnaire.

Nonetheless, we agree with Judge Angell's more salient conclusion that the ALJ did not err in giving little weight to a treating source opinion where the treatment relationship was relatively brief. R&R at 14. An ALJ may accord greater weight to a treating source's medical opinion when the treating source has seen the claimant a number of times and over a long enough period of time to allow her to obtain a longitudinal picture of the impairment. 20 C.F.R. § 404.1527(c)(2)(i); 20 C.F.R. § 416.927(c)(2)(i). As explained in the R&R, Dr. Oxenhorn completed the questionnaire a little over a month after she began treating D'Angelo. R&R at 14. As such, the ALJ did not err in giving little weight to Dr. Oxenhorn's questionnaire based upon the brevity of her treating relationship with D'Angelo. Further, while it is unclear exactly what the ALJ meant to encompass with the phrase "treatment notes of record," that ambiguity does not disturb our deference to the ALJ's decision to afford little weight to a treating source opinion that came after a brief treatment period. We will therefore overrule D'Angelo's first objection.

Second, D'Angelo objects to the R&R's account of what Dr. Urban's and Ms. Charles's notes revealed. Pl.'s Objs. at 2. As we have already explained, it is unclear if the ALJ meant to refer to those notes absent express reference thereto, and, after review, we find the content of those notes does not disturb the ALJ's relative weighing of the treating source's opinion. We will therefore overrule D'Angelo's second objection.

Third, D'Angelo objects to the portion of the R&R upholding the ALJ's finding that Dr. Oxenhorn's assessment of D'Angelo's marked limitations and assignment of a GAF score of 42

to him were contradicted by her opinion of D'Angelo's fair to good prognosis. Pl.'s Objs. at 2-3 (citing R&R at 16).

Dr. Oxenhorn gave D'Angelo a GAF score of 42. Administrative R. at 29. On the DSM-IV's GAF Scale, a score of 41 through 50 indicates a serious impairment in social or occupational functioning, and a score from 51 through 60 shows moderate impairment. Id. Dr. Oxenhorn's treatment notes indicated that D'Angelo was not out of touch with reality, and that he had a fair to good prognosis. Id. After noting that GAF scores are highly subjective appraisals, the ALJ explained that she did not generally give numerical scores significant weight -- especially when such scores appeared unsupported by the evidentiary record or failed to consider a claimant's medical improvement following treatment. Id. The R&R explained that, on the one hand, Dr. Oxenhorn's assessment checked certain boxes indicating that D'Angelo was in dire straits and gave him a GAF score of 42, but, on the other, explained that he was not out of touch with reality and had a fair to good prognosis. R&R at 16. The R&R then found that since Dr. Oxenhorn did not explicitly reconcile these two seemingly contradictory assessments, the ALJ did not err in giving her opinion little weight on the basis of that inconsistency. Id. D'Angelo objects that these findings are not contradictory because "Dr. Oxenhorn's belief that with appropriate treatment, Plaintiff's prognosis is reasonably good does not in any way undermine her finding that at the time she gave her opinion, Plaintiff lacked the capacity to perform even simple work on a sustained basis and was expected to remain unable to do so for at least 12 months." Pl.'s Objs. at 3.

Although we agree that it could be logically consistent for a treating physician to determine that a patient is not functional now but could improve in the future, the ALJ did not err by according little or lesser weight to Dr. Oxenhorn's opinion on the basis of that perceived

inconsistency in this particular case. Dr. Oxenhorn had only been treating D'Angelo for a little over a month when she determined that he lacked the capacity to perform even simple work on a sustained basis for at least a year, but then gave him a fair to good prognosis. In light of the brevity of the treating relationship, we find the ALJ did not err in according Dr. Oxenhorn's opinion little weight given that her prediction of D'Angelo's continued inability to perform simple work on a sustained basis for at least a year was in tension with her belief in his eventual fair to good prognosis. We will therefore overrule D'Angelo's third objection.

Fourth, D'Angelo objects to the portion of the R&R upholding the ALJ's finding that Dr. Oxenhorn's opinion was contradicted by the medical evidence of record. Pl.'s Objs. at 3. D'Angelo argues that even though Dr. Oxenhorn "offered her opinion early in the treatment relationship, it is important that her opinion is part of a consensus among all of the treating and examining sources who have participate in" D'Angelo's care. Id. at 3-4. D'Angelo concedes that his primary care physician's opinions are not well-supported or explained, but argues that his opinion and documentation of D'Angelo's persistent anxiety problems support Dr. Oxenhorn's opinion, and Dr. Saporito's opinion supports Dr. Oxenhorn's opinion. Id.

The ALJ gave the opinion of D'Angelo's primary care physician little weight because of its inconsistency and lack of internal support, and, as explained above, articulated why she afforded little weight to the opinions of Dr. Oxenhorn and Dr. Saporito.  Administrative R. at 29. The ALJ sufficiently explained her reasoning as to why she gave little weight to these opinions individually, and so it was not an error for her to give little weight to the opinions collectively. We will therefore overrule D'Angelo's fourth objection.

Fifth, D'Angelo objects to the portion of the R&R upholding the ALJ's rejection of Dr. Saporito's opinion. Pl.'s Objs. at 4. The ALJ afforded limited weight to the consultative

examiner's report because it was "based on an isolated exam and the overstated limitations are not supported by the examiner's own narrative statement or the evidence of record." Administrative R. at 28. Karen Saporito, Ph.D., the consultative examiner in D'Angelo's case, examined D'Angelo and prepared an adult mental status evaluation. R&R at 9. She diagnosed him with major depressive disorder, social phobia, posttraumatic stress disorder, attention deficit hyperactivity disorder, rule out learning disorder, and alcohol dependence. Id.

Because Dr. Saporito is a non-treating, examining physician, the ALJ was required to consider six factors in determining what weight, if any, to give Dr. Saporito's opinion: (1) the examining relationship, (2) the nature, extent, and length of the treating relationship, (3) supporting explanations provided for the opinion, (4) the consistency of the opinion with the records as a whole, (5) the medical source's specialization, and (6) any other relevant factors. 20 C.F.R. § 416.927(c)(1)-(6). The ALJ explained that she gave Dr. Saporito's opinion little weight because it resulted from an isolated exam (factors 1 and 2), was internally inconsistent with the narrative statement (factor 3), and inconsistent with both the state agency consultant's opinion and the consultative exam report of August 2010 (factor 4). Administrative R. at 28. We must evaluate the ALJ's decision based on the ALJ's articulated reasoning, and while we might have come to a different conclusion about Dr. Saporito's assessment, we find that the ALJ's conclusion that Dr. Saporito's assessment was due little weight is supported by substantial evidence and clear reasoning. We will therefore overrule D'Angelo's fifth objection.

## V.  Conclusion

As we have overruled all of D'Angelo's objections to the R&R, we adopt and approve Judge Angell's recommendation that the relief sought in D'Angelo request for review be denied because the ALJ's decision was supported by substantial evidence. We will therefore enter

judgment in favor of defendant Carolyn W. Colvin and affirm the Commissioner of the Social Security Administration's decision. An appropriate Order follows.

BY THE COURT:

 /s/ Stewart Dalzell, J.
Stewart Dalzell, J.
